UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STERLING BROWN,

    Petitioner,

v.

G. SWARTHOUT, Warden,

    Respondent.

No. C 11-4736 YGR (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner seeks federal habeas relief from his state convictions. For the reasons set forth below, the petition for such relief is DENIED.

## BACKGROUND

In 2008, a Santa Clara County Superior Court jury found Petitioner guilty of making criminal threats, false imprisonment, and forcible oral copulation. Consequent to the jury's verdicts, the trial court sentenced him to 27 years and eight months in state prison. Petitioner was denied relief on state judicial review. This federal habeas petition followed.

Evidence presented at trial showed that in 2002, Petitioner struck and raped Yvonne Doe, an adult female, with whom he had had consensual sex in the weeks prior to the rape. (Ans., Ex. C at 3–5.)

This was Petitioner's third trial on charges arising from this incident. His first two convictions were reversed on appeal. The state appellate court reversed the first conviction because the trial court wrongly admitted evidence of Petitioner's pretrial statements. *People v. Brown*, No. H026138, 2004 WL 2384330 (Cal. Ct. App. Oct. 26, 2004). The second conviction was reversed because evidence was presented that Petitioner had just been released from prison. *People v. Brown*, No. H029123, 2006 WL 3222334 (Cal. Ct. App. Nov. 8, 2006).

As grounds for federal habeas relief, Petitioner claims that the prosecutor committed misconduct, thereby violating his right to due process.

## STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at

413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

The state appellate court described the relevant facts as follows:

During the prosecution's direct examination, Yvonne testified that on the night she first met [Petitioner], he made what she perceived were gang references by saying "Piru. Woo-woo. Nigga what . . . MP Hoods." However, at the time she did not think he was in a gang because he seemed too old to be gang affiliated. Nevertheless, later, when [Petitioner] became "disrespectful," Yvonne thought [Petitioner] might have some gang affiliation.

On cross-examination, defense counsel showed Yvonne a copy of some of her preliminary hearing testimony and asked her to review "page 30, lines 19 through 22." Thereafter, Yvonne indicated that this testimony revealed that although she had testified at the preliminary hearing that [Petitioner] had referred to "Norte," she was not "sure whether or not he was gang affiliated" even after the preliminary hearing.

On redirect, the prosecutor asked Yvonne to read from her testimony given in [Petitioner]'s 2003 trial regarding her conversation with another witness. The court permitted Yvonne to do so over defense counsel's hearsay and improper impeachment objections. Thus, Yvonne read the following testimony from the trial transcript. "I told her what had happened. I said, you know, I don't know what to do. I'm scared because I really have a strong feeling he's gang affiliated. I'm afraid if I call the police and he gets arrested, two days later he is arraigned. I had no idea of his criminal background and had a feeling —"

Immediately, defense counsel objected and asked to approach the bench. The following occurred at sidebar:

"[Defense counsel]: Judge, with all due respect to [the prosecutor], who[m] I respect, I think he is engaging in intentional prosecutorial misconduct here. [¶] The whole idea behind the two appeals of this case has been information — his criminal record, his probation [*sic*] status. He has directed this witness to read a portion of [the] transcript where she refers to his criminal background. He is inviting error in this case. [¶] First of all, the first appeal was reversed because of mention of his probation [*sic*] status. [Footnote omitted.] To go into criminal background, knowingly, is exactly and precisely the same thing and invites the jury to speculate. Somehow — criminal past is completely objectionable. I think it constitutes prosecutorial misconduct.

"[The prosecutor]: My response to that is, with all due respect, which is what someone says when they're going to say something disrespectful, I completely disagree. This is 356 Evidence Code, which is why I'm bringing the statements in to put in context. When defense counsel yesterday — I have a number of statements like this — picks out a line, under Evidence Code 356, I'm entitled — this is a question about gang affiliation. And error — this is, by the way, from the first trial transcript. Her quote is 'I told her what happened. I said, you know, I don't know what to do. I'm scared because I really have a strong feeling he is gang affiliated. I'm afraid if I call the police [and he gets arrested], two days later — I had no idea of his criminal background. And I had a feeling if I saw him driving down the street, he was going to hurt me even more.' [¶] What I've instructed this witness, in order to comply with the Court of Appeal's decision, was never to say 'probation,' never to say 'parole,' never to say 'prison.' Okay. [¶] She is saying I have no idea what his guy is capable of. That's not saying that he has a criminal history or criminal background. There is no evidence that's being introduced like that in this particular case . . . [¶] If the court believes that that is objectionable, okay, and shouldn't come in, then we simply move to strike it. [¶] The problem that happened with the second decision is Judge Condron said that statement could come in — parole and prison could come in for limited purpose. I think if there is a remedy — and I don't think there is — simply to strike that, I can move on to page 165 of this transcript where she explains the problem to how she felt about the — being involved in gangs. That's the solution. I do not believe that her saying, 'I was afraid because I had no idea of his criminal background' is a totally ambiguous statement. She has no idea. The jury is not given any information in this case whether he does or doesn't have criminal —

"[Defense counsel]: We're both experienced attorneys. We know the damage is done once the jury hears it. [The prosecutor] knows he wanted the jury to hear that. He wanted the jury to hear that part that said, 'I had no idea of his criminal background.' There is no other way to take that.

"The Court: Well, reasonable minds could differ in terms of that interpretation. So your objection is noted. It's overruled."

However, the court went on to ask the prosecutor the purpose of having Yvonne read verbatim from the transcript. The prosecutor explained that the evidence was being offered under Evidence Code section 356 because certain things were left out of the trial transcript when defense counsel cross-examined Yvonne regarding her testimony on page 90 of the first trial transcript. The prosecutor indicated that what was left out "is counsel left impression [*sic*] and asked her many times on cross-examination you really weren't afraid of him." The prosecutor continued, "Judge, what I would suggest, in [an] abundance of caution, would be to strike her previous answer." The court agreed to do what the prosecutor suggested and strike part of Yvonne's answer.

The court informed the jury that defense counsel's objection was sustained and that the court was striking all of Yvonne's previous answer. At the request of defense counsel, the court admonished the jury to disregard the answer. FN5[.]

FN5. Subsequently, during pre-deliberation instructions, the court told the jury that if the court had struck testimony from the record, they must disregard it and must not consider that testimony for any purpose.

Later, the prosecutor sought to put on the record "a brief discussion" that had occurred "on Thursday out in court . . . that wasn't on the record." The court stated that the discussion had been put on the record, but if the prosecutor wanted to do it again, the court would be "happy to do it." The prosecutor explained again that he was having Yvonne read "under Evidence Code section 356" from proceedings that had occurred in January 2003 to put Yvonne's testimony into context. The prosecutor stated that defense counsel had "made the motion for a mistrial" and "also said it was prosecutorial misconduct because after the second trial the case was reversed because Candace Ventra said the victim was afraid of [Petitioner] for, among other reasons, he had just gotten out of prison." Again, the prosecutor asserted that he "thought the statement was admissible, and also not violative of any in limine motions" because the statement was "not asserting that [Petitioner] has a criminal background or prior convictions."

> The prosecutor went on to explain that he asked the court to strike Yvonne's testimony, which the court did. The court asked defense counsel if he had any comment. Defense counsel stated, "Yes, your honor. [¶] Your honor, I just note for the record we had initially objected when she started to read from the transcript. [Footnote omitted.] So I think we preserved the record in that way. And we objected when the portion that came up regarding criminal — I submit based on previous objections at the bench and in court." The court indicated that the "record will speak for itself. And I think I indicated, as we all had put on the record, that my interpretation of that comment that Yvonne made, as [the prosecutor] stated, it's not a positive statement, he had a criminal background and she didn't know about it, and gang affiliation. [¶] So that was a factor that she considered in terms of her level of fear. That's the way I interpreted it. That's the — the reason I overruled your objection, but later on struck the testimony pursuant to the request of [the prosecutor]."

(Ans., Ex. C at 6–10.) The state appellate court concluded that the prosecutor did commit misconduct: "In asking Yvonne to read the statement she made during a prior hearing in which she said 'I had no idea of his criminal background,' the prosecutor violated the trial court's implied *in limine* ruling, and, whether done intentionally or not, committed misconduct." (*Id.* at 12.)

Such misconduct was, however, "harmless." (*Id.*) First, any possible prejudice was cured by the jury instructions to disregard the evidence. Second, "the oblique and fleeting reference to [Petitioner]'s 'criminal background' was not so outrageous or inherently prejudicial that the admonition to disregard it would have been ineffectual"[1]:

> The jury was not directly told that [Petitioner] had a criminal background, or the composition of that background. Rational jurors who were instructed to disregard Yvonne's testimony could not reasonably have speculated that [Petitioner] had an extensive criminal history. After the court struck the

---

[1] Ans., Ex. C at 13.

> testimony, the jury heard no more about it; the subject was not referenced in any way during closing argument. It is as likely as not that Yvonne's testimony "I had no idea of his criminal background" had passed from the jurors' minds by the time they began deliberations.
>
> The excluded statement in this case is far less troublesome than the inflammatory statement at issue in [Petitioner]'s previous appeal — that he had just been released from prison, which was admitted in his previous trial albeit for a limited purpose, and which carried with it the implication that [Petitioner] had committed serious crimes in the past. The statement in this case is not of a similar nature or effect. Accordingly, we conclude that any harm from the statement was cured by the trial court's admonition to the jury to disregard the testimony.

(*Id.* at 13.) (citations and footnotes omitted).

A defendant's due process rights are violated when a prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotation omitted).

Habeas relief is not warranted here. The state appellate court reasonably determined that there was no prejudice. First, it was reasonable to determine that Yvonne's comment was not prejudicial. It was the sole reference in the entire trial to any notion that Petitioner had a criminal history. Also, the comment contained no details about his criminal history, and there was no attempt to elaborate.

Furthermore, even if the comment were prejudicial, habeas relief would not be forthcoming. The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established Federal law under § 2254).

Second, the state court reasonably determined that its instructions to the jury cured any possible ill effects of Yvonne's comment. This Court must presume that the jury followed its instructions and disregarded the testimony. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). With such presumption, the state court's decision on this point was reasonable,

and it entitled to AEDPA deference.

Petitioner's claim is DENIED.

## CONCLUSION

The state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of Respondents and close the file.

**IT IS SO ORDERED.**

DATED: May 7, 2013

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE